## Rivers v. Commonwealth.

(Decided January 12, 1926.)

## Appeal from Carter Circuit Court.

1. Criminal Law—Refusal of Continuance for Absence of Alleged Eye-witnesses Held Not Abuse of Discretion.—In prosecution for murder, trial court did not abuse its discretion in refusing to allow a continuance for absence of alleged eye-witnesses, where defendant's affidavit did not state that witnesses were present at difficulty, and evidence showed them not to have been present, so that defendant obtained greater advantage by being permitted to read testimony witnesses would have given than by having them present in court.

2. Criminal Law—Error, if Any, in Admission of Evidence, Held Not Prejudicial.—Error, if any, in admitting evidence that defendant discharged his pistol on the highway about a quarter of a mile from deceased's home shortly before the homicide, held not prejudicial to him.

3. Homicide—Evidence Held Not to Warrant Qualification of Self-defense Instruction with Regard to Abandonment of Difficulty by Defendant.—Evidence held not to warrant qualification of self-defense instruction by stating that, if defendant in good faith abandoned the difficulty before he shot deceased, and deceased thereafter put him in danger of losing his life, or great bodily harm, he then had right to defend himself, and kill deceased if necessary.

4. Criminal Law—In Absence of Objection or Ruling in Bill of Exceptions to Objectionable Argument, Appellate Court will Not Consider Question.—Where bill of exceptions did not show any objection to closing argument of prosecutor, or any ruling by court on any objection, or that any exception was taken, Court of Appeals, under Criminal Code of Practice, section 282, may not consider that question.

WAUGH & HOWERTON and AUSTIN FIELDS for appellant.

A. F. BYRD and F. E. DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

Appellant, Webster Rivers, was found guilty of murder by a jury of the Carter circuit court and his punishment was fixed at confinement in the penitentiary for life. He prosecutes this appeal seeking to reverse the judgment entered in conformity with that verdict for the various reasons hereinafter discussed.

It is earnestly insisted that the trial court erred in overruling appellant's motion for a continuance. The homicide appears to have been committed on October 25, 1924. Appellant does not appear to have been indicted until April 8, 1925. The trial was had on April 21, 1925. The chief reason urged in brief of counsel for appellant in support of the contention that the trial court erred in failing to sustain his motion for a continuance is that three eye-witnesses who would have corroborated appellant as to how the difficulty arose and what was said and done by the participants in it were not present to testify for him. He set forth in his affidavit what he could prove by them if they were present, and the trial court per· mitted him to read it as their deposition. It appears from the uncontradicted testimony herein that on the day the homicide was committed appellant passed along the public highway in front of the home of deceased, Jess Glover, and after having passed it some forty yards, upon meeting Frank Sammons and Ralph Patton, stopped and engaged them in conversation. Upon being asked by one of them if he had any whiskey appellant replied that he did not, and thereupon pulled from his pocket an empty quart bottle which he held in the air in his left hand, and drew from its concealment a .32 special pistol which he had on his person, and shot the bottle to pieces. After the shot fired, deceased, Jess Glover, called to the boys from his porch and requested or demanded that they get away from about his premises and cease the disturbance they were creating. Appellant immediately rode back to deceased's home, following which the difficulty occurred in which Glover lost his life. The Sammons and Patton boys were both introduced as witnesses for the Commonwealth, and, as the uncontradicted testimony discloses, they were on the public highway on one side of deceased's home. Jake Mayberry also was introduced as a witness for the Commonwealth, and his testimony discloses— and there was none to the contrary—that he was in the public road about fifty yards beyond deceased's home from where the witnesses, Sammons and Patton, were. Mrs. Glover, the surviving widow of deceased, also was a witness for the Commonwealth. The affidavit of appellant as to the three absent witnesses, who are said to have been present and to have seen the difficulty, reads: "The affiant states that on yesterday he learned for the first time that he could prove by Ollie Johnson, George

Springer and John Riley that they were present and near enough to hear and see at the time the trouble started between him and Jess Glover in which Jess Glover was shot and killed, and heard part of the conversation between them.'' It then recited what facts could be proved by those witnesses if they were present. It will be observed that the affidavit did not state Ollie Johnson, George Springer and John Riley were present when the difficulty occurred. It merely states that affiant learned on the previous day for the first time that he could prove by them that they were present. In detailing the facts and circumstances of the homicide appellant did not testify that any of the three absent witnesses were present or saw or heard anything that was said or done. Neither of the two witnesses who were with appellant on the public road on one side of deceased's home and who testified for the Commonwealth saw or knew of the presence of any of those three witnesses. Mayberry, who testified for the Commonwealth and who was located on the public road on the other side of deceased's home, did not see or know of their being present. The wife of deceased, who was by his side when he was shot and who saw and knew of the presence of the three witnesses who testified, did not see or know of the presence of any of the three absent witnesses mentioned in appellant's affidavit for a continuance. Six months had elapsed between the date of the homicide and that of the trial. It appears that appellant had been confined in jail during all of that time, never having made a motion for bail, and that he had been sent from the jail of the county where the homicide was committed to that of a neighboring county for safekeeping. Those facts indicate that preparation for trial necessarily was attended with considerable difficulty. However, he appears to have employed or to have had employed for him two attorneys to represent him. His father, a merchant, was alive and able to look after the preparation of the case for him. From the facts appearing in the record, we are convinced that appellant, in so far as the trial of his case is concerned, obtained more advantage by being permitted to read the affidavit as to what the three absent witnesses would state as their deposition than by obtaining their presence, because we are convinced that none of the three witnesses named in the affidavit were present when the homicide occurred or could have testified for appellant as to the facts of it. If

they had been present, surely appellant himself or some of the other four eye-witnesses who were present and witnessed this tragedy would have seen them and have known of their presence. Under all the facts appearing in the record, it can not be held that the trial court abused its discretion in overruling appellant's motion for a continuance.

Appellant complains that the trial court permitted incompetent evidence to go to the jury. His chief complaint in that particular is that the trial court erred in admitting evidence of crimes committed by him other than that for which he was on trial. The record discloses that over appellant's objection the Commonwealth was permitted to prove that as he rode along the public highway about a quarter of a mile from deceased's home and before he reached it and only a few moments before the homicide occurred, he discharged his pistol twelve times on the public highway. We deem it unnecessary to determine whether or not under the facts of this case that testimony was competent. It is sufficient to say that the error, if any, in its admission, could not be held to have been prejudicial. That shooting does not appear to have had any connection with the homicide committed by appellant shortly afterwards. The mere fact that in a sparsely settled rural community appellant discharged his pistol on the public highway is too insignificant a fact to have had any weight or influence upon the jury in determining the question of appellant's guilt or innocence and in fixing his punishment. If the four witnesses who testified for the Commonwealth are to be believed appellant became incensed because deceased requested or demanded that he move on and cease shooting and blackguarding in front of his home in the presence of his wife and children. For that reason he rode back to his home and without provocation or excuse began to curse and abuse him and to fire at him with the pistol which he had. According to their testimony all that was said by deceased was in an effort to placate appellant and to prevent trouble with him. After all efforts for peace upon the part of deceased had failed and appellant had fired two or more shots at him with his pistol, deceased, in an effort to defend himself and family, returned the fire, and in the shooting which followed was mortally wounded by appellant. Appellant for himself testified that he rode back to the home of deceased to apologize to him and that

he undertook to do so but that deceased would not listen to the apology, and after cursing and abusing him put him in danger by firing at him first with a pistol and then with a shotgun, and that he shot only after deceased had shot at him. None of those present who testified corroborate appellant. No reason is suggested why the two boys to whom appellant admits he was talking immediately before the homicide occurred and with whom he appears to have been upon perfectly friendly terms, or as to why the witness, Jack Mayberry, who was on the public highway on the other side of deceased's home when the difficulty occurred should have deviated from the truth in their testimony in this case. It can not be held, in view of these facts, if erroneous, that it was prejudicially so to admit the evidence that shortly before the homicide and within about a quarter of a mile of deceased's home appellant discharged his pistol on the public highway.

Appellant concedes that all instructions given were correct except No. 5a. By it appellant's right to self-defense was qualified properly, as is conceded by appellant, but it is insisted that under the evidence the qualification should have been qualified and the jury advised that although they might believe that appellant sought and brought on the difficulty if he had in good faith abandoned the difficulty before he shot deceased and deceased thereafter put him in danger of losing his life or of suffering great bodily harm at his hands that he then had the right to defend himself and to kill deceased if necessary to avert the real or apparent danger. We are unable to uphold that contention of appellant, however, because the testimony herein does not warrant that instruction. Appellant's testimony that he started away from deceased and got some twenty or thirty yards from him also placed the time of his having done so before any of the shots were fired. He testified that he was going away, had gone some twenty or thirty yards, and that deceased then began shooting at him; that he then returned the fire, and continued to fire until deceased was mortally wounded. He appears to have discharged all six of the loads of his revolver and then to have fully reloaded it and to have discharged them all again. Appellant's testimony that he turned from deceased and went some twenty or thirty yards away was not according to his testimony an abandonment by him of any difficulty that

he had sought and brought on, but occurred before any shooting had been done by either himself or deceased. He does not claim to have abandoned the difficulty after the danger to himself or to deceased arose. Hence there was no place in this case for an instruction upon the theory that appellant abandoned the difficulty which he had sought and brought on or as to what his rights were under those circumstances.

Appellant complains of the closing argument made for the Commonwealth by counsel employed to prosecute this case. We find, however, that the bill of exceptions does not show that any objection was made to any of the argument of the attorney or that the court ruled on any objection so made or that any exception was taken. Hence, under section 282 of the Criminal Code of Practice, we may not consider that question. See also L. & E. Ry. Co. v. Crawford, 155 Ky. 723, 160 S. W. 267, and cases cited therein.

From our consideration of the record herein, we are unable to perceive any error committed upon the trial hereof to the prejudice of appellant's substantial rights, and hence the judgment herein must be affirmed.

Judgment affirmed.